## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| SAHAMITR PRESSURE CONTAINER PLC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | Court No. 24-00064 |

## COMPLAINT

Plaintiff Sahamitr Pressure Container Plc. (also known as Sahamitr Pressure Container Public Company Limited, "SMPC" or "Plaintiff"), by and through the undersigned counsel, White & Case LLP, alleges and states as follows:

## ADMINISTRATIVE DECISION TO BE REVIEWED

1. Plaintiff contests the final results issued by the International Trade Administration of the Department of Commerce ("Department") in the third administrative review ("POR3") of the antidumping duty ("ADD") order covering steel propane cylinders from Thailand (Case No. A-549-839). The period of review ("POR") for POR3 was August 1, 2021 through July 31, 2022. The final results were published in the *Federal Register* on February 23, 2024, and amended to correct a ministerial error on March 29, 2024. *Steel Propane Cylinders from Thailand: Final Results of Antidumping Duty Administrative Review; 2021-2022*, 89 Fed. Reg. 13690 (Feb. 23, 2024) ("*Final Results*"); *Steel Propane Cylinders from Thailand: Amended Final Results of Antidumping Duty Administrative Review; 2021-2022*, 89 Fed. Reg. 22123 (Mar. 29, 2024) ("*Amended Final Results*"); *see also* accompanying *Issues and Decision Memorandum for the*

*Final Results of the Administrative Review of the Antidumping Duty Order on Steel Propane Cylinders from Thailand; 2021-2022* (Feb. 16, 2024) ("*I&D Memo*").

## JURISDICTION

2.  The Court of International Trade has jurisdiction over this action pursuant to 19 U.S.C. § 1516a(a)(2)(B)(iii) and 28 U.S.C. § 1581(c).

## STANDING OF PLAINTIFF

3.  Plaintiff is a Thai producer and exporter of merchandise subject to the ADD order at issue. Plaintiff participated in the administrative review that resulted in the contested finding. Plaintiff therefore is an "interested party" within the meaning of 19 U.S.C. § 1677(9)(A) and has standing to bring this action pursuant to 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(c).

## TIMELINESS OF THIS ACTION

4.  The contested determination was published in the *Federal Register* on February 23, 2024. *See Final Results*, 89 Fed. Reg. 13690. Plaintiff filed a Summons on March 25, 2024, *i.e.*, within 30 days of the publication of the contested determination in the *Federal Register*, in accordance with 28 U.S.C. § 2636(c) and 19 U.S.C. § 1516a(a)(2)(A); and is filing a complaint today (April 24, 2024), *i.e.*, within 30 days of the Summons as specified in 19 U.S.C. § 1516a(a)(2)(A).

## PROCEDURAL HISTORY AND BACKGROUND

5.  Pursuant to requests by SMPC and Petitioner Worthington Industries ("Petitioner"), the Department initiated the review for POR3. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 87 Fed. Reg. 61278, 61284 (Oct. 11, 2022); *Steel Propane Cylinders from Thailand: Request for Antidumping Duty Administrative Review*, Aug. 30, 2022 (ACCESS Barcode 4279679-01); *Steel Propane Cylinders from Thailand – Request for Third Administrative Review of the Antidumping Duty Order*, Aug. 31, 2022 (ACCESS Barcode 4280219-01). During the review, SMPC submitted complete responses to all Department requests for information. The

Department also conducted an onsite verification of SMPC's responses in Bangkok, Thailand, from September 25 through 29, 2023. *See* Department Memorandum to the File re: *Verification of the Sales Responses of Sahamitr Pressure Container Plc. in the Antidumping Review of Steel Propane Cylinders from Thailand*, Nov. 6, 2023, at (ACCESS Barcode 4458412-01) ("*Verification Report*").

6. In the preliminary results for the review, the Department assigned SMPC a dumping margin of 2.12 percent. *See Steel Propane Cylinders from Thailand: Preliminary Results of Antidumping Duty Administrative Review; 2021-2022*, 88 Fed. Reg. 60921 (Sept. 6, 2023) ("*Preliminary Results*"); *see also* accompanying *Decision Memorandum for Preliminary Results of Antidumping Duty Administrative Review: Steel Propane Cylinders from Thailand; 2021-2022* (Aug. 30, 2023) ("*Preliminary Decision Memo*"). The Department used the average-to-transaction ("A-T") price comparison method to calculate the preliminary dumping margin. *See Preliminary Decision Memo* at 4-7. The Department also found that certain non-liquid propane gas ("non-LPG") cylinders were outside the scope of the order and removed these products from its dumping margin analysis. *See Preliminary Decision Memo* at 8.

7. In the *Final Results*, the Department continued to exclude certain non-LPG cylinders from SMPC's sales databases and also continued to use the A-T method. *See I&D Memo* at 8-12, 15-18. After correcting a ministerial error, the Department assigned SMPC a final dumping margin of 2.15 percent. *Amended Final Results*, 89 Fed. Reg. 22123. We summarize below the facts relating to the exclusion of certain cylinders and the differential pricing analysis.

**THE DEPARTMENT'S EXCLUSION OF CERTAIN CYLINDERS AS OUT-OF-SCOPE**

8. In calculating the dumping margin, the Department compares U.S. sales to home-market sales of "identical" products. *See* 19 U.S.C. § 1677(16)(A). "To identify such merchandise, Commerce designs a 'model-match' methodology consisting of a hierarchy of certain

3

characteristics used to sort merchandise into groups. Each group is then assigned a control number ('CONNUM'), used to match home market sales with U.S. sales." *Bohler Bleche GmbH v. United States*, 324 F. Supp. 3d 1344, 1347 (Ct. Int'l Trade 2018).

9.      Since the original investigation ("OI"), the Department has used a CONNUM field to measure the gas capacity of SMPC's cylinders, Field CAPACITYH/U, placed second in the hierarchy. *See Request for Information – Antidumping Duty Administrative Review: Sahamitr Pressure Container Public Company Limited (SMPC) – Steel Propane Cylinders from Thailand*, Oct. 12, 2022 at B-8, C-7 (ACCESS Barcode 4299281-01). In the OI and each administrative review, SMPC has reported its nominal gas capacity in accordance with the Department's instructions — based on customer information and sales and technical documentation, rather than a nominal gas capacity converted from water capacity.

10.     In the second administrative review ("POR2"), despite SMPC reporting its nominal gas capacity in a manner consistent with the prior segments of the proceeding, Petitioner argued that certain cylinders sold by SMPC were refrigerant cylinders rather than propane cylinders, with actual gas capacities that rendered them outside the scope of the ADD order. *See generally Steel Propane Cylinders from Thailand – Petitioner's Comments in Advance of the Upcoming Preliminary Results*, Aug. 5, 2022 (ACCESS Barcode 4272269-01), at 2-7; *Steel Propane Cylinders from Thailand: Petitioner's Case Brief for Sahamitr Pressure Container Public Company Limited*, Oct. 6, 2022, at 5-18.

11.     The Department adopted Petitioner's argument in the POR2 final results, removing all sales of the cylinders in question from the calculation of SMPC's dumping margin as out-of-scope cylinders. *See Steel Propane Cylinders from Thailand: Final Results of Antidumping Duty Administrative Review; 2020-2021*, 88 Fed. Reg. 14334 (Mar. 8, 2023) and accompanying memorandum *Steel Propane Cylinders from Thailand: Issues and Decision Memorandum for the*

*Final Results of Antidumping Duty Administrative Review; 2020-2021* (Mar. 2, 2023) at 4-9. This decision is at issue in an ongoing appeal before this Court. *See Sahamitr Pressure Container PLC. v. United States*, Court No. 23-00077 (stayed June 21, 2023).

12. Upon initiation of the POR3 review, Petitioner filed a request to revise the model-match methodology. *Steel Propane Cylinders from Thailand – Petitioner's Request for the Department to Modify the Model-Match Methodology*, Oct. 17, 2022 (ACCESS Barcode 4301467-01) ("*Petitioner's Model Match Request*"). Petitioner placed its POR2 case brief on the record and argued that the Department should introduce a new "Type of Gas" characteristic to the model-match methodology, alleging that industry standards establish that the cylinders designed for different gases "are not interchangeable" and have "important, physical differences." *Id.* at 2-3, Attachment 1.

13. SMPC filed comments rebutting Petitioner's arguments and clarifying that cylinders produced for use with propane are physically interchangeable with cylinders produced for other gases. *Steel Propane Cylinders from Thailand: Response to Petitioner's Request to Revise the Model-Match Methodology*, Nov. 18, 2022 (ACCESS Barcode 4312680-01). SMPC also provided additional information and supporting documentation in response to a separate set of questions on model match criteria, in numerous questionnaire responses, and at verification. *See Steel Propane Cylinders from Thailand: Responses to Section B and Section C of the Antidumping Duty Questionnaire*, Nov. 28, 2022, at B-12–B-14, C-11–C-12 (ACCESS Barcode 4314827-01); *Steel Propane Cylinders from Thailand: Response to the Department's Questions Regarding Product Characteristics and Proposed Changes to Model Match Criteria*, Apr. 11, 2023 (ACCESS Barcode 4364748-01) ("*SMPC Model Match Response*"); *Steel Propane Cylinders from Thailand: Rebuttal Comments Regarding Product Characteristics and Model Match Criteria*, Apr. 26, 2023 (ACCESS Barcode 4370038-01); *Steel Propane Cylinders from Thailand: Response to*

*Supplemental Section B and Section C Questionnaire*, May 30, 2023, at SBC-1–SBC-3, SBC-5 (ACCESS Barcode 4382697-01); *Steel Propane Cylinders from Thailand: Response to the Second Supplemental Section B and Section C Questionnaire*, July 20, 2023, at SBCD-1–SBCD-6 (ACCESS Barcode 4405525-01); *Steel Propane Cylinders from Thailand: Response to the August 3, 2023 Supplemental Section B, C, and D Questionnaire*, August 21, 2023, at SQBCD-1–SQBCD-6 (ACCESS Barcode 4421317-01); *Verification Report* at 10-20.

14. In its case brief, SMPC argued that gas type should not be used to distinguish in-scope and out-of-scope cylinders because "the final end-use of a steel cylinder, or the type of gas for which a steel cylinder is ultimately intended, are not related at all to a steel cylinder's nominal gas capacity or any other physical characteristic of the steel cylinder." *Steel Propane Cylinders from Thailand: Case Brief*, Nov. 13, 2023, at 7 (ACCESS Barcode 4462041-01) ("*SMPC Case Brief*"). SMPC pointed to its *Model Match Response* and the Department's *Verification Report* to show that the non-LPG cylinders that had been removed from the Department's preliminary margin calculation as outside the scope were physically identical to the propane cylinders deemed to be within the scope. *Id.* at 8-9.

15. Despite SMPC's explanations and record evidence, the Department found that "gas type does affect the physical characteristics of a cylinder" and continued to exclude certain non-LPG cylinders from the margin calculation in the *Final Results*. *I&D Memo* at 8-11.

### USE OF THE AVERAGE-TO-TRANSACTION COMPARISON METHOD

16. The statute and regulation prioritize the Department's use of an average-to-average ("A-A") price comparison method to calculate a dumping margin. *See* 19 U.S.C. § 1677f-l(d)(l)(A); 19 C.F.R. § 351.414(c)(1). If, however, "there is a pattern of export prices (or constructed export prices) for comparable merchandise that differ significantly among purchasers,

regions, or periods of time," the Department may use an A-T price comparison method. 19 U.S.C. § 1677f-l(d)(l)(B).

17. Applying its "differential pricing" analysis, the Department used the "Cohen's *d*" test to determine whether there was a pattern of significant price differences. *See Preliminary Decision Memo* at 5-7. Based on this test, the Department preliminarily concluded that SMPC's U.S. sales had prices that "differ{ed} significantly among purchasers, regions, or time periods." *Id.* at 7. Consequently, the Department used the A-T method to calculate SMPC's preliminary dumping margin. *See id*.

18. In its case brief, SMPC argued that use of the A-T method was unwarranted based on the United States' World Trade Organization ("WTO") obligations and recent jurisprudence from the Court of Appeals for the Federal Circuit ("CAFC"). *See SMPC Case Brief* at 9-11.

19. First, SMPC cited *US – Washing Machines*, in which the WTO Appellate Body found that the Department's differential pricing analysis, and use of zeroing under the A-T method based on application of the differential pricing analysis, are inconsistent with certain provisions of the WTO Anti-Dumping Agreement and the General Agreement on Tariffs and Trade. *SMPC Case Brief* at 10 (citing WT/DS464/AB/R (Sept. 7, 2016)). To "ensure consistency with the United States' WTO obligations," SMPC argued, the Department should refrain from using the A-T method.

20. Second, SMPC cited *Stupp Corp. v. United States* ("*Stupp III*") and *Mid Continent Steel & Wire Inc. v. United States* ("*Mid Continent V*") to argue that the Department's use of the Cohen's *d* test was inconsistent with recent CAFC precedent. In *Stupp III*, the CAFC explained that the meaningfulness of the Cohen's *d* coefficient relies on three assumptions: the "test groups and the comparison groups" must be (1) "normally distributed" (the "normality" assumption); (2) "of sufficient size" (the "sufficient observation size" assumption); and (3) "of roughly equal variances" (the "roughly equal variances" assumption). *Id.* at 11 (citing 5 F.4th 1341, 1357-58,

1360 (Fed. Cir. 2021)).  SMPC argued that the Department must explain whether these three assumptions were satisfied and that, "{a}bsent a reasonable explanation, the Department cannot rely on the Cohen's *d* test to justify use of the A-T comparison method (with zeroing)."  *Id*.

21.     In *Mid Continent V*, the CAFC found unreasonable the Department's calculation of the denominator of the Cohen's *d* coefficient based on the simple average of the standard deviations for the test group and the comparison group, because the two groups differed in size.  *Id.* (citing 31 F.4th 1367, 1380 (Fed. Cir. 2022)).  SMPC argued that the Department had "likewise calculated the Cohen's *d* coefficient using simple averaging even though the test and comparison groups differ in size," and, consequently, "the Department must likewise either adequately explain its use of simple averaging, or select a different method to calculate the Cohen's *d* coefficient."  *Id.* at 11-12.

22.     The Department continued to use the A-T comparison method in the *Final Results*.  In doing so, the Department found that the WTO report cited was without effect under U.S. law and could not supersede the Department's exercise of discretion in applying the statute.  *I&D Memo* at 15-16.  The Department also highlighted that both CAFC decisions cited were "part of ongoing litigation."  *Id.* at 16.  Because neither this Court nor the CAFC had declared the Department's approach to be unlawful, the Department found that it was reasonable to continue relying on the differential pricing methodology, including the Cohen's *d* test.  *Id.* at 16-19.

## STATEMENT OF CLAIMS

### COUNT 1:  THE DEPARTMENT'S EXCLUSION OF CERTAIN CYLINDERS AS OUT-OF-SCOPE

23.     Paragraphs 5 through 22 are incorporated by reference.

24.     The Department's decision to reclassify certain cylinders as outside the scope of the ADD order based on gas type was unsupported by substantial evidence.

25.     As SMPC demonstrated, its reporting of nominal gas capacity was supported by record evidence and consistent with the Department's instructions. Petitioner's efforts to revise the model match criteria to prioritize the type of gas for which a cylinder is ultimately intended are refuted by clear record evidence confirming that LPG and non-LPG cylinders are physically interchangeable. The Department, in turn, incorrectly emphasized final end-use over the cylinders' fundamental physical characteristics. Its decision to exclude the cylinders at issue was therefore unsupported by substantial evidence.

### COUNT 2:  USE OF THE AVERAGE-TO-TRANSACTION COMPARISON METHOD

26.     Paragraphs 5 through 22 are incorporated by reference.

27.     The Department's decision to use the A-T comparison method to calculate SMPC's dumping margin was unsupported by substantial evidence and not in accordance with law.

28.     The statute permits the Department to use an A-T comparison method only if "there is a pattern of export prices (or constructed export prices) for comparable merchandise that differ significantly among purchasers, regions, or periods of time . . . ." 19 U.S.C. § 1677f-l(d)(l)(B). The Department, in turn, uses the Cohen's *d* test to determine whether such price differences exist. However, the Cohen's *d* test is subject to certain assumptions and requirements that, per recent and relevant precedent, the Department neither addressed nor followed. *See Stupp*, 5 F.4th at 1357-58, 1360; *Mid Continent*, 31 F.4th at 1380-81.  Thus, pursuant to this precedent and the Department's failure to provide the necessary explanation, its continued use of the A-T price comparison method was unsupported by substantial evidence and not in accordance with law.

### PRAYER FOR RELIEF AND JUDGMENT

WHEREFORE, Plaintiff respectfully requests that the Court:

(A)     Enter judgment in favor of Plaintiff;

(B)    Hold and declare that the Department's exclusion of certain cylinders as outside the scope is unsupported by substantial evidence;

(C)    Hold and declare that the Department's use of the A-T price comparison method is unsupported by substantial evidence and otherwise not in accordance with law;

(D)    Remand this matter to the Department to issue revised final results in conformity with the Court's decision; and

(E)    Grant Plaintiff such additional relief as the Court may deem just and proper.

Respectfully submitted,

/s/ Jay C. Campbell
Jay C. Campbell
Ron Kendler
Danica Harvey
WHITE AND CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
(202) 626-3600

Date: April 24, 2024